```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
```
GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY
COMPANY,

                              Plaintiffs,                              REPORT AND
    -against-                                                 RECOMMENDATION

EVA GATEVA, M.D.,                                         12 CV 4236 (MKB)(RML)

    -and-

HOLLIS MEDICAL SERVICES, P.C., PARK AVENUE
MEDICAL CARE, P.C., GENTLE CARE MEDICAL
SERVICES, P.C., and EXCELLENT MEDICAL CARE
SOLUTION, P.C.,

    -and-

JACOB LEVIEV, NY BASIC MANAGEMENT CORP.,
JOHN DOE "1" through "5", and JOHN DOE
CORPORATIONS "1" through "5",

                                Defendants.
```
----------------------------------------------------------------------X
```
LEVY, United States Magistrate Judge:

        On August 23, 2012, plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "plaintiffs" or "GEICO") filed this action against defendants Eva Gateva, M.D. ("Gateva"), Hollis Medical Services, P.C. ("Hollis"), Park Avenue Medical Care, P.C. ("Park Avenue"), Gentle Care Medical Services, P.C. ("Gentle Care"), Excellent Medical Care Solutions, P.C. ("Excellent Medical"), Jacob Leviev ("Leviev"), N.Y. Basic Management Corp. ("Basic Management"), John Does 1 through 5, and John Doe Corporations 1 through 5 (collectively, "defendants"), alleging various causes of action arising out of a fraudulent insurance scheme.

On March 25, 2013, plaintiffs moved for a default judgment against Hollis, Park Avenue, Gentle Care, and Gateva (collectively, the "Defaulting Defendants").[1] By order dated April 1, 2013, the Honorable Margo K. Brodie, United States District Judge, referred plaintiffs' motion for a damages inquest and a Report and Recommendation. By order dated April 3, 2013, the Defaulting Defendants were directed to file a submission in opposition by April 22, 2013, but failed to respond. (Order, dated Apr. 3, 2013.)

For the reasons stated below, I respectfully recommend that the court enter a judgment for liability and damages against each defendant as set forth herein. Additionally, I recommend that the court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding claims submitted by Hollis, Park Avenue, and Gentle Care (collectively, the "Corporate Defaulting Defendants").

## BACKGROUND AND FACTS

Plaintiffs allege that Gateva, a physician, and multiple medical professional corporations purportedly owned by Gateva, engaged in a large-scale insurance fraud scheme, and, as a result, GEICO paid out on fraudulent claims and is being forced to defend itself in collection actions on pending fraudulent claims.[2] (Complaint, dated Aug. 21, 2012 ("Compl."), ¶¶ 1-3; 170; 174-175.) Plaintiffs claim that defendants exploited New York's "no-fault" automobile insurance laws (hereinafter "no-fault laws") by submitting fraudulent no-fault billing

---

[1] On March 1, 2013, GEICO reported that it had reached a confidential settlement with Leviev, Basic Management, and Excellent Medical. (Letter of Ryan Goldberg, Esq., dated Mar. 1, 2013, at 1.)

[2] As an exhibit to the complaint, plaintiffs attached a criminal indictment in the case of United States of America v. Zemylansky, et al., No. 12 CR 171 (S.D.N.Y.). The indictment charges Gateva, and several other individuals not named in the instant matter, with Conspiracy to Commit Health Care Fraud and Conspiracy to Commit Mail Fraud arising out of an ongoing insurance fraud scheme. (Indictment, annexed as Ex. 5 to Compl.) At the time of this Report and Recommendation, the criminal action against Gateva was in the pre-trial stage. (See Docket Sheet, No. 12 CR 171 (S.D.N.Y.).)

for medical services allegedly provided to individuals involved in New York automobile accidents. (Id. ¶ 1.) New York's no-fault laws require automobile insurers, such as plaintiffs, to provide Personality Injury Protection Benefits to insured individuals. (Id. ¶¶ 19-20; see also N.Y. INS. LAW §§ 5101-5109.)

Plaintiffs allege that, beginning in early 2008, defendants carried on a series of interrelated schemes to defraud automobile insurers, including GEICO. As part of the schemes, non-physicians, including defendants Leviev, John Does 1 through 5, Basic Management, and John Doe Corporations 1 through 5 (collectively, the "Management Defendants"), "purchased" Gateva's physician's license for a fixed sum and used the license to fraudulently incorporate four medical professional corporations in New York: Hollis, Park Avenue, Gentle Care, and Excellent Medical (collectively, the "PC Defendants"). (Compl. ¶¶ 1(i); 28-30.) The Management Defendants unlawfully controlled and operated the PC Defendants. The PC Defendants served as vehicles through which fraudulent no-fault claims for reimbursement of medical services were submitted to GEICO. (Id. ¶ 1(ii)-(iii).) The Management Defendants concealed their unlawful ownership and control over the PC Defendants and used fraudulent agreements to siphon the profits to themselves. (Id. ¶¶ 1(v); 34-35.)

Plaintiffs assert that defendants have at all relevant times known that the PC Defendants were owned or controlled by non-physicians, not the nominal owner or other licensed physicians; that the medical services were performed pursuant to a fraudulent billing protocol and without regard to the actual medical necessity of treatment; that defendants submitted bills for medical services that were greatly exaggerated, inflated, or not performed at all; and that the PC Defendants submitted numerous bills to GEICO for services performed by independent contractors, rather than the PC Defendants' employees. (Id. ¶¶ 5(i)-(iv); 168.)

Plaintiffs allege that as a result of the fraudulent scheme, GEICO has incurred damages of over one million dollars since 2008.  (Id. ¶ 6.)  Plaintiffs also allege that defendants have submitted bills for reimbursements to GEICO totaling approximately $720,0000 for allegedly fraudulent services, which GEICO has yet to pay.  (Id. ¶¶ 173-175.)  Plaintiffs seek a declaratory judgment against the Corporate Defaulting Defendants; judgment against the Defaulting Defendants for common law fraud and unjust enrichment; and judgment against Gateva for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d), as well as damages and prejudgment interest.

## DISCUSSION

**I.  LIABILITY**

A.  Default Judgment

Plaintiffs have demonstrated that all of the Defaulting Defendants were properly served with the summons and complaint.  (Affidavit of Service of Tony Coniguaro, sworn to Sept. 28, 2012 (Docket Entry No. 6); Affidavits of Service of Michael Corleone, sworn to Sept. 5, 2012 (Docket Entry Nos. 8, 9, 10)).)  In addition, the Clerk of the Court has entered defaults as to each of the Defaulting Defendants, confirming that none has filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired.  (Clerk's Certificates, dated Oct. 24, 2012 (Docket Entry Nos. 17, 19, 20); Clerk's Certificate, dated Nov. 1, 2012.)  As to individual defendant Gateva, plaintiffs also have submitted a nonmilitary declaration based on an investigation performed after the claimed default, pursuant to 50 U.S.C. § 521(b). (Declaration of Ryan Goldberg, Esq., filed Mar. 25, 2013 ("Goldberg Decl."), ¶¶ 10-11; Military Status Report, annexed as Ex. B to the Goldberg Decl.)  I therefore respectfully

recommend that plaintiffs' motion for a default judgment against the Defaulting Defendants be granted.

It is well settled that, upon default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). "The issue remains, however, whether plaintiff[s'] well-pleaded allegations in the complaint, if accepted as true, establish liability for all of the claims plaintiffs raise against defendants." Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd., No. 10 CV 5611, 2012 WL 1427796, at *4 (E.D.N.Y. Apr. 6, 2012), adopted by 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (citations omitted).

Plaintiffs request a declaratory judgment against the Corporate Defaulting Defendants stating that GEICO is not obligated to pay the outstanding claims submitted by these defendants. Against all the Defaulting Defendants, plaintiffs allege state law claims of common law fraud and unjust enrichment. Additionally, plaintiffs allege that defendant Gateva is liable for violations of RICO, 18 U.S.C. §§ 1962(c), (d). I will address each of plaintiffs' claims in turn.

B. Declaratory Judgment

Plaintiffs seek a declaratory judgment against the Corporate Defaulting Defendants due to the fraudulent scheme and misrepresentations perpetuated by these defendants. A court may exercise its discretion to issue a declaratory judgment in cases where the party seeking the declaratory judgment can demonstrate the existence of an actual case or controversy. 28 U.S.C. § 2201(a). See Infinity Health Prods., Ltd., 2012 WL 1427796, at *4. "Declaratory relief is appropriate '(i) where the judgment will serve a useful purpose in

clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002) (quoting Md. Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)). "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." Infinity Health Prods., Ltd., 2012 WL 1427796, at *4 (citation omitted).

Plaintiffs have established that this is an actual controversy where a declaratory judgment would afford specific relief and clarify their legal obligations as to pending claims. As discussed above, plaintiffs' complaint alleges that the PC Defendants submitted over one million dollars in fraudulent claims that GEICO has already paid out, as well as bills for approximately $720,000 worth of unpaid fraudulent claims. (Compl. ¶ 174). Plaintiffs state that the amount of unpaid claims actively in dispute between GEICO and the Corporate Defaulting Defendants is $521,841.96, and that the Corporate Defaulting Defendants currently are attempting to recover $444,586.18 through active, pending litigation and arbitration. (Declaration of Jennifer Fogarty, sworn to Mar. 22, 2013 ("Fogarty Decl."), ¶¶ 4-9, annexed as Ex. C to the Goldberg Decl.; see also Litigation Claim Run: Active Claims Against GEICO ("Litigation Run"), annexed as Ex. 3 to the Fogarty Decl.) Plaintiffs seek to clarify their legal obligations and liability as to pending claims submitted by the Corporate Defaulting Defendants.

Plaintiffs' complaint alleges, with particularity as to each of the Corporate Defaulting Defendants, that these pending claims are fraudulent because they are part of defendants' ongoing scheme to submit claims for medical services within New York's no-fault laws. Plaintiffs also allege that the Corporate Defaulting Defendants were fraudulently

incorporated and ineligible to seek or recover no-fault benefits, were engaged in unlawful fee-splitting with unlicensed individuals and entities, and that many of the billed-for services were not provided by employees of the Corporate Defaulting Defendants. (Compl. ¶¶ 1; 28-130; 162-172.) Furthermore, plaintiffs allege that the claims for medical services were inflated and exaggerated, that the medical services provided were not medically necessary, and that some medical services were not performed at all. (Id. ¶¶ 28-130; Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated Mar. 25, 2013 ("Pls.' Mem."), at 10-11.)

The inflated claims and claims made for medical services not actually supplied are all fraudulent claims under the no-fault statutory scheme. See Infinity Health Prods., Ltd., 2012 WL 1427796, at *4 n.2 (citing AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 WL 3710370, at *2-4, 14 (E.D.N.Y. Feb. 22, 2005)) (noting that no-fault laws provide that knowingly filing a claim containing materially false or misleading information is a crime); N.Y. INS. LAW § 403(d). Plaintiffs thus have established their entitlement to a declaratory judgment. Therefore, I respectfully recommend that this court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding fraudulent claims submitted by the Corporate Defaulting Defendants, Hollis, Park Avenue, and Gentle Care.

C. Common Law Fraud Claims Against the Defaulting Defendants

"Under New York law, for . . . plaintiffs to prevail on a claim of fraud, [they] must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff[s], (5) that causes damage to the plaintiff[s]." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). "Where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud

perpetrated by each defendant." Infinity Health Prods., Ltd., 2012 WL 1427796, at *5 (citation omitted).

Plaintiffs allege, in detail and with specificity, that each of the Defaulting Defendants not only knew that they were submitting fraudulent claims for medical services to GEICO, but that they did so intentionally as part of a calculated scheme to profit from payment of the claims, and that they actively misrepresented and concealed information in an effort to prevent GEICO from discovering that the claims were fraudulent. (Compl. ¶¶ 26; 28-130; 164-172; 181-183.) "These facts give rise to a strong inference of fraudulent intent, and are thus sufficient to establish the scienter requirement." Infinity Health Prods., Ltd., 2012 WL 1427796, at *5 (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)).

Moreover, plaintiffs sufficiently allege reasonable reliance by explaining GEICO's duties under the no-fault laws, and by claiming that GEICO made payments in reliance on the fact that the bills appeared, on their face, to have been submitted in accordance with the law. (Compl. ¶ 171 ("The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to and did cause GEICO to rely upon them."); see id. ¶¶ 19-25; 164-172; 182-183.) Plaintiffs have established that they were damaged by the misrepresentations by asserting that they have paid out over one million dollars for fraudulent claims. (Id. ¶ 184.)

"These particularities are more than sufficient to show that each . . . defendant is liable for fraud." Infinity Health Prods., Ltd., 2012 WL 1427796, at *6 (citing AIU Ins. Co., 2005 WL 3710370, at *14). Therefore, I respectfully recommend that the court enter a judgment that the Defaulting Defendants are liable for common law fraud.

    D.  Unjust Enrichment Claims Against the Defaulting Defendants

For plaintiffs to prevail on a claim of unjust enrichment under New York law, they "must establish (1) that the defendant[s] w[ere] enriched; (2) that the enrichment was at the plaintiff[s'] expense; and (3) that the circumstances are such that in equity and good conscience the defendant[s] should return the money . . . to the plaintiff[s]." Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001) (citing Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 79 (2d Cir. 1986)). See also AIU Ins. Co., 2005 WL 3710370, at *14.

Plaintiffs have adequately alleged that each of the Defaulting Defendants benefitted at plaintiffs' expense because they received payouts on claims to GEICO for medical services that were inflated, exaggerated, fabricated, or fraudulent. (See Compl. ¶¶ 164-172; 187-192.) Plaintiffs have demonstrated that the Defaulting Defendants participated in an elaborate, large-scale plan designed to "siphon money out of a statutory scheme designed for the public good" and that "equity and good conscience require restitution." Infinity Health Prods., Ltd., 2012 WL 1427796, at *6. Therefore, I respectfully recommend that the court enter a judgment that the Defaulting Defendants are liable for unjust enrichment.

    E.  RICO Claim Against Gateva

Plaintiffs allege that Gateva violated RICO, 18 U.S.C. § 1962(c), through her operation of three racketeering enterprises, the Corporate Defaulting Defendants. (Compl. ¶¶ 193-199; 207-213; 221-227.) To establish civil liability under RICO, plaintiffs must demonstrate that Gateva violated 18 U.S.C. § 1962, and that plaintiffs suffered damages as a result of the violation. See AIU Ins. Co., 2005 WL 3710370, at *19-20. "For a § 1962(c) violation, the

elements are: (1) the defendant; (2) through the commission of two or more predicate acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly participated; (6) in an enterprise; (7) the activities of which affected interstate commerce." Infinity Health Prods., Ltd., 2012 WL 1427796, at *7 (citing AIU Ins. Co., 2005 WL 3710370, at *19-20). Additionally, the defendant and the enterprise(s) must be separate entities, "not merely the same person referred to by a different name." Gov't Employees Ins. Co. v. Hollis Med. Care, P.C., No. 10 CV 4341, 2011 WL 5507426, at *4 (E.D.N.Y. Nov. 9, 2011) (citations and quotation marks omitted). See also Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 368-69 (E.D.N.Y. 2012).

Mail fraud is a racketeering activity. 18 U.S.C. § 1961(1). "Pleading mail fraud requires: (1) the existence of a scheme to defraud; (2) the use of United States mails or interstate wire communications to further that scheme; and (3) evidence that defendant[] did so with a specific intent to defraud." Infinity Health Prods., Ltd., 2012 WL 1427796, at *7 (citing Am. Arbitration Ass'n, Inc. v. Defonseca, No. 93 CV 2424, 1996 WL 363128, at *9 (S.D.N.Y. June 28, 1996)).

GEICO's complaint alleges with particularity that Hollis, Park Avenue, and Gentle Care are RICO enterprises, see 18 U.S.C. § 1961(4), and that Gateva is a natural person associated with the enterprises and knowingly conducted and/or participated in the business of the three RICO enterprises. (Compl. ¶¶ 194-197; 208-211; 215-218; 222-225.) These allegations are sufficient to satisfy RICO's enterprise requirement. See Hollis Med. Care, P.C., 2011 WL 5507426, at *4-5. According to plaintiffs, Gateva participated in a large-scale scheme over a period of at least five years, wherein she used the United States mail to submit numerous fraudulent claims through the Corporate Defaulting Defendants. (Compl. ¶¶ 195-196; 210; 223-224.) "Indeed, the very basis of the . . . fraudulent scheme was th[e] submission of fraudulent

- 10 -

bills . . . to GEICO by use of the mail." Hollis Med. Care, P.C., 2011 WL 5507426, at *8. The complaint describes the specific circumstances constituting the fraudulent scheme, details Gateva's participation in the scheme, and includes an exhibit of samples of fraudulent bills that Gateva mailed or caused to be mailed to GEICO on specific dates and times. (Compl. ¶¶ 26-28; 36; 70-78; 90-94; 103-111; 162-172; GEICO Representative Sample of Fraudulent Mailings, annexed as Exs. 1-3 to Compl.)

Plaintiffs have sufficiently alleged that Gateva's scheme constituted mail fraud under the statute, and that as a result of this ongoing scheme, GEICO suffered significant monetary damages. (See Compl. ¶¶ 198; 212; 226.) Therefore, I respectfully recommend that this court enter a judgment that Gateva is liable for a violation of RICO, 18 U.S.C. § 1962(c), for a continuing pattern of racketeering activity.

F.  RICO Conspiracy Claim Against Gateva

Plaintiffs also allege that Gateva violated RICO, 18 U.S.C. § 1962(d), by carrying on a conspiracy to engage in an unlawful enterprise. To establish a RICO civil conspiracy claim, the complaint must specifically allege an agreement to commit predicate acts. Morin v. Trupin, 835 F. Supp. 126, 135 (S.D.N.Y. 1993). Furthermore, plaintiffs must demonstrate that Gateva "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." Id. (internal citations and quotation marks omitted). This requirement may be satisfied by showing that a defendant "possessed knowledge of only the general contours of the conspiracy." Hollis Med. Care, P.C., 2011 WL 5507426, at *10.

Plaintiffs allege that Gateva agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, by submitting or causing to be submitted

- 11 -

numerous fraudulent bills seeking payment from GEICO. (Compl. ¶¶ 200-206; 214-220; 228-233.) Plaintiffs allege that Gateva, in exchange for compensation, agreed to "sell" her medical license to the Management Defendants in order to facilitate the submission of fraudulent, large-scale billing to insurers. (Id. ¶¶ 7; 26-28; 70-73; 103.) Finally, plaintiffs assert that Gateva knew of the fraudulent aim of the ongoing insurance fraud scheme, and caused the submission of fraudulent claims through the mail. (Id. ¶¶ 203; 217; 231-232.)

These allegations are sufficient to show that Gateva knew the general contours of the ongoing scheme, and is liable for a RICO conspiracy. See Infinity Health Prods., Ltd., 2012 WL 1427796, at *8; Hollis Med. Care, P.C., 2011 WL 5507426, at *10; Allstate Ins. Co. v. Valley Phys. Med., No. 05 CV 5932, 2009 WL 3245388, at *7 (E.D.N.Y. Sept. 30, 2009). Therefore, I respectfully recommend that this court enter a judgment that Gateva is liable for a violation of RICO, 18 U.S.C. § 1962(d), for carrying on a RICO conspiracy.

## II. DAMAGES

"'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible to mathematical computation.'" John Hancock Life Ins. Co. v. Perchikov, No. 04 CV 98, 2010 WL 185007, at *3 (E.D.N.Y. Jan. 15, 2010) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

In support of their motion, plaintiffs submitted the declaration of Jennifer Fogarty, a GEICO Claims Manager. (See Fogarty Decl.) Fogarty provided the total amount of claims submitted by the Corporate Defaulting Defendants, the total amount that GEICO paid out on claims submitted by the entities, and the total amount of unpaid claims submitted by each entity. (Id. ¶¶ 4-9.) Attached to her declaration, Fogarty provided documents with the individual claims

comprising the basis for her calculations, which listed the medical provider, claim numbers, check numbers, payment dates, and amounts, and, for outstanding collection actions, the claim number, venue, and amount sought. (Tax Identification Payment Run ("TIN Run"), annexed as Ex. 1 to the Fogarty Decl.; Claim Run, annexed as Ex. 2 to the Fogarty Decl.; Litigation Run.)

A. Damages as to the Corporate Defaulting Defendants

1. Damages

Plaintiffs request that all of the Defaulting Defendants be held jointly and severally liable for the total amount that GEICO has paid out on the fraudulent claims submitted by the Corporate Defaulting Defendants, and for prejudgment interest on the total claims. (Pls.' Mem. at 29.) However, I find that plaintiffs have failed to establish that the Corporate Defaulting Defendants should be jointly and severally liable for claims they submitted to GEICO. "Plaintiffs have not established that [the Corporate Defaulting Defendants] worked with each other to submit false claims, nor have they submitted support for the proposition that GEICO's harm with respect to each scheme is 'indivisible' as to [the Corporate Defaulting Defendants]." Infinity Health Prods., Ltd., 2012 WL 1427796, at *11.

Plaintiffs' damages inquest submissions delineate the claims submitted by each Corporate Defaulting Defendants, indicate which defendant was involved in each specific claim, and list the total amounts billed by each defendant. (Fogarty Decl. ¶ 6; see TIN Run.) Therefore, I respectfully recommend that the Corporate Defaulting Defendants be held liable for damages as follows: Hollis is liable for $459,305.68, Park Avenue is liable for $530,307.58, and Gentle Care is liable for $80,779.19.

2. Interest

New York law provides for the award of prejudgment interest on damages, computed from the "earliest ascertainable date the cause of action existed" at the non-compoundable rate of nine percent (9%) per annum. N.Y. C.P.L.R. §§ 5001(a), 5004. It appears that plaintiffs have identified that date as January 1, 2008 with regard to Hollis, and January 1, 2009 with regard to Gentle Care and Park Avenue. (See Interest Charts, annexed as Ex. E to the Goldberg Decl.; TIN Run; Compl. ¶¶ 28; 70; 103.)

Since interest continues to accrue on all outstanding principal through the date of entry of judgment, I cannot recommend a specific interest award at this time. Instead, I respectfully recommend that plaintiffs be awarded interest at a rate of nine percent (9%) per annum on the above-listed damages through the date of entry of judgment.[3]

B. Damages as to Gateva

1. Damages

Plaintiffs request that Gateva be held jointly and severally liable for the total of: (1) the amount that GEICO has paid out on the fraudulent claims submitted by the Corporate Defaulting Defendants; (2) treble damages on the amount of these claims, as provided under RICO; and (3) prejudgment interest on the actual damages (before treble damages). (Pls.' Mem. at 27-29.) Thus, GEICO seeks to hold Gateva liable for all of the claims that the Corporate Defaulting Defendants submitted to GEICO, in addition to treble damages and prejudgment interest.

---

[3] As explained above, Hollis is liable for $459,305.68, Park Avenue is liable for $530,307.58, and Gentle Care is liable for $80,779.19. In order to calculate prejudgment interest for Hollis, a nine percent (9%) annual interest rate on the amount due should be applied from January 1, 2008 through the date of entry of judgment. In order to calculate prejudgment interest for Park Avenue and Gentle Care, a nine percent (9%) annual interest rate on the amount due should be applied from January 1, 2009 through the date of entry of judgment.

"In a RICO conspiracy, defendants are jointly and severally liable for all of the plaintiff[s'] damages, even those with which an individual defendant was not personally involved." Infinity Health Prods., Ltd., 2012 WL 1427796, at *9 (citing Chubb & Son Inc. v. Kelleher, Nos. 92 CV 4484, 95 CV 0951, 2010 WL 5978913, at *6 (E.D.N.Y. Oct. 22, 2010), adopted by 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011)). Furthermore, treble damages are available under RICO, 18 U.S.C. § 1964(c), and such an award is appropriate in a default judgment. Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc., No. 10 CV 1762, 2013 WL 168079, at *7 (E.D.N.Y. Jan. 16, 2013).

Plaintiffs have introduced evidence of fraudulent claims paid by GEICO to the Corporate Defaulting Defendants totaling $1,070,392.45. (Fogarty Decl. ¶ 6.) Plaintiffs have also established that Gateva is liable for a RICO conspiracy and for substantive RICO violations related to the claims submitted by the Corporate Defaulting Defendants. Therefore, Gateva is jointly and severally liable for the entire amount of the damages, which after trebling under the RICO statute totals $3,211,177.35.

2. Interest

"Where, as here, treble damages are adequate to compensate plaintiffs, an award of pre-judgment interest would generally be inappropriate." Chubb & Son Inc., 2010 WL 5978913, at *8. However, since plaintiffs have asserted a pendent state claim for fraud, they are entitled under New York law to pre-judgment interest on damages arising under that claim. Id. ("Under New York law, awarding pre-judgment interest on damages awarded for fraud is mandatory."). Since interest continues to accrue on all outstanding principal through the date of entry of judgment, I cannot recommend a specific interest award at this time. Instead, I respectfully recommend that plaintiffs be awarded interest at a rate of nine percent (9%) per

- 16 -

annum on damages totaling $1,070,392.45, from January 1, 2008 through the date of entry of judgment.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the court grant plaintiffs' motion for a default judgment and enter a judgment that defendants Eva Gateva, M.D., Hollis Medical Services, P.C., Park Avenue Medical Care, P.C., and Gentle Care Medical Services, P.C. are liable for common law fraud and unjust enrichment, and that Gateva is liable for violating RICO, 18 U.S.C. §§ 1962(c), (d). I respectfully recommend that the Defaulting Defendants be held liable for damages as follows: Gateva is jointly and severally liable for $3,211,177.35; Hollis is liable for $459,305.68; Park Avenue is liable for $530,307.58; and Gentle Care is liable for $80,779.19. I also respectfully recommend that plaintiffs be awarded prejudgment interest at a rate of nine percent (9%) per annum, as detailed above. Finally, I respectfully recommend that this court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding claims submitted by Hollis, Park Avenue, and Gentle Care.

Plaintiffs are directed to serve a copy of this Report and Recommendation on each Defaulting Defendant and to electronically file proof of service with the court within three (3) days. Any objections to this Report and Recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Brodie and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

    Respectfully submitted,

    /s/
    ROBERT M. LEVY
    United States Magistrate Judge

Dated: Brooklyn, New York
    March 10, 2014